# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| **MICHAEL DENOIA** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Cause No.: 1:23-cv-00344-SEB-TAB** |
| | ) |
| **ROCHE DIAGNOSTICS CORPORATION** | ) |
| **Defendant.** | ) |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

Comes now the Plaintiff, Michael Denoia ("Denoia"), through counsel, and for his Response in Opposition to the Defendant, Roche Diagnostics Corporation ("Roche") Motion for Summary Judgment states as follows:

## CASE SUMMARY[1]

In August 2021, Roche instituted a covid vaccine Mandate that each of its employees receive a vaccine by November 15, 2021. Denoia requested a religious exemption in September 2021, that was rooted in his Christian faith that opposed abortion, believed his "Body is a Temple," and that the covid vaccines were a Mark of the Beast. On November 2, 2021, Roche denied his accommodation because his former position had been deemed "customer-facing." Denoia was able to find a lesser, "fixed term" position with Roche which extended his employment for a time; however, once the term ended so did Denoia's employment.

Roche claims that accommodating Denoia in his remote, IT position that he had held since 2003 would have been an undue hardship. It states that Denoia could not perform his essential functions while being accommodated and keeping up with vendor credentialing requirements at its customers was too burdensome a task and, as a result, it asks this court to enter summary judgment in its favor.

As argued below, summary judgment is not appropriate in this case. Denoia provides evidence to support both his Title VII and ACRA failure to accommodate claims. Further, the evidence

---

[1] Plaintiff's case is the second of three cases filed against Roche in the Southern District. The other two are: *Sterle v. RocheRoche USA, LLC* (Cause #1:22-cv-01654-RLY-MJD), which is pending on summary judgment, and *Troullier v. Roche* (*Cause #1:23-cv-02219-MPB-TAB)*, which was filed in December 2023. Roche has agreed that depositions/discovery in prior cases may be used/applied here.

demonstrates: (1) Roche's alleged undue hardships are not supported by any evidence, (2) that Roche approved several customer facing individuals to remain in their customer facing roles unvaccinated, and (3) that none of these individuals posed an undue hardship.

Therefore, when the evidence is considered in the light most favorable to the Denoia and all credibility determinations are reserved for the jury, Roche's Motion should be denied and Plaintiff's Title VII/ACRA failure to accommodate claims should be permitted to proceed to trial.[2]

## STATEMENT OF FACTS

Denoia disputes the following material facts as asserted by Roche.[3]

### A. Plaintiff's Response to Defendant's Cited Facts

*1) When the Policy was implemented, Plaintiff held an IT Service Engineer position with Roche.*
**DISPUTED/CLARIFIED**:   Denoia was employed as a "Clin Solutions Implementation Engineer." (**Exhibit A** – Former Job Description, pg. 1).  Said role involved "remote and/or on-site installation" and around "10%" travel." (*Id*.).  Roche testified that said role could be both non-customer and customer facing. (**Exhibit B** – Roche's 2nd 30b6 Depo., pg. 23:2-23).[4]

*2) Prior to the COVID-19 Pandemic, Plaintiff admits that his position regularly visited customer sites. (Dep. Plaintiff at 38). In fact, Plaintiff admitted that up to 20% of his hours worked were on-site with customers. (Dep. Plaintiff at 38).*
**DISPUTED/CLARIFIED**:   Denoia testified that starting in 2011, 10-20% of his job duties involved being at the customers location and the other 80-90% was spent in his office. (**Exhibit C** – Denoia's Depo., pg. 38:8-21).  In 2011, Denoia oversaw only one product (Vantage) that involved in-person installation. (*Id*. at 39:10-12).  As time went on, Vantage lost market share and Denoia took on two additional products that "very rarely" required in-person installation. (*Id*. at 39:10-25).  During the relevant period of the Mandate, Denoia, "sat at home working on [his] computer" as there was no necessity to be in-person to install the products. (*Id*. at 39:23-25).

In 2020, Denoia had only one Vantage customer. (*Id*. at 43:21-23)   If issues arose with the other two products Denoia handled, "99.9% of the time" he did not need to visit the customer in-person

---

[2] Denoia acknowledges that discovery has generated insufficient evidence to support his Title VII discrimination, Title VII retaliation, and ADEA discrimination claims.
[3] Dkt. #44. For ease of reference, Denoia repeats the facts asserted by Roche in italics with his response immediately following.
[4] Ryann Ricchio/Ryan Stephens were Roche's corporate representatives during its two 30(b)(6) deposition and said testimony is binding on Roche. (*FinishMaster, Inc. v. GMP Cars Collision Fairfield, LLC*, 2020 WL 13574986, at *5 (S.D. Ind. Sept. 8, 2020); *Dallas v. Marion Power Shovel Co.*, 126 F.R.D. 539, 542 (S.D. Ill. 1989). Roche may not "patch -up potentially damaging deposition testimony with a contradictory affidavit." *Commercial Underwriters Ins. Co. v. Aires Envtl. Servs., Ltd.*, 259 F.3d 792, 799 (7th Cir.2001)

to resolve the issue. (*Id*. at 40:2-15). Additionally, because there were only six individuals to cover the US and Canada, Roche routinely hired a third party to resolve issues at the customers location. (*Id*. at 40:23-41:13).[5]

*3) Plaintiff describes the process as the Roche sales team sold Roche products and then the IT Service Engineers were responsible for completing the sale through installation of the Roche product.*
**DISPUTED/CLARIFIED**:  In regards to the installation process, Denoia was asked, "Okay. Meaning you're there on-site or just there to take the phone call?" (Ex. C, pg. 42:25-43:1).  Denoia testified, "Call me up. Yes. Not on-site. As I said, uPath or Connect, we did not go on-site. It was not -- we didn't deal with any of the hardware. We dealt with virtual servers." (*Id*. at. 43:2-5). When discussing Vantage, Denoia testified that the market loss resulted in (1) less installs and (2) installs got to the point it could be done virtually. (*Id*. at 43:11-44:12).  If issues ever did arise for this product, it rarely involved in-person interaction. (*Id*. at 40:16-22).

*4) In fact, Plaintiff admits that the IT Service Engineer positon is "customer-facing." (Dep. Plaintiff at 90 "Q. The ITSE position that you held as of November 15, 2021, do you agree or disagree that it was customer-facing? A. Yes. It was"). Plaintiff's customers were laboratories and hospitals.*
**DISPUTED/CLARIFIED**:  Denoia agreed that his religious exemption was denied due to Roche determining it was customer facing.  (Ex. C, pg. 88:24-90:23).  Specifically, Denoia did not know his role was customer facing until his exemption was rejected. (*Id*. at 88:25-89:6).  When later questioned about Denoia's unlawful termination, Denoia clarified that his former role was not customer facing. (*Id*. at 107:2-3).

*5) Plaintiff learned about the Policy and he sought an exemption from the COVID-19 vaccine based on "Christian beliefs." (Dep. Plaintiff at 73-74).*
**DISPUTED/CLARIFIED**:   In his accommodation request, Denoia stated that, "life is valuable and abortion is a sin and cannot profit from fetal cells. Also, the covid vaccines were the "Mark of the Beast." (**Exhibit D** –Accom. Request Notes).  Denoia testified to the same. (Ex. C, pg. 46:8-14 & 67:12-16).

*6) Plaintiff admits that all of the IT Service Engineers were required to get the COVID-19 vaccination because the position is customer-facing. (Dep. Plaintiff at 91).*
**DISPUTED/CLARIFIED**:   See Disputed Paragraph 4.

---

[5] Roche testified that if an employee saw nine clients virtually but one in-person whether their accommodation would be denied or not depended on if the in-person customer was a "key customer" (i.e. not whether an undue hardship existed). (Ex. C, pg. 52:9-53:12).

7) *In fact, Plaintiff admitted that he is unaware of any Roche employee who held a customer-facing position that was not required to get the COVID-19 vaccination. (Dep. Plaintiff at 91).*

**DISPUTED/CLARIFIED**:   In discovery, Roche produced three different excel sheets that identified individuals that sought a religious accommodation, whether it was approved or denied, and the role they held.  The evidence demonstrates that at least three individuals received approved accommodations and remained in their customer facing roles unvaccinated. (**Exhibit E** - Steele Affidavit, **Exhibit F** – Employee 2 Accom. Documents, **Exhibit G** –Employee 3 Accom. Documents, and **Exhibit H** – Roche Accom. Excel (Approved)). Roche confirmed that the positions listed for these individuals were customer facing: Senior Clinical Solutions Implementation (Ex. B, as to Field Engineering Specialist, pg. 32:23-33:10 and as to Account Executive, pg. 13:3-9, 46:1-7, 48:5-14, 57:15-58:12).  Further, at least four individuals requested an accommodation, but it is unclear if they remained in their customer facing roles as Roche has failed to produce the relevant evidence. (**Exhibit I** – Roche's Response to 2nd Set of Discovery, Request #44 and **Exhibit J** – Roche Accom. Excel (Possibly Approved)).

8) *Once he learned that his exemption was denied, Plaintiff began to look for alternative positions within Roche. (Dep. Plaintiff at 80-81).*

**DISPUTED/CLARIFIED**:   Denoia's accommodation request was originally approved and then retroactively denied on Tuesday, November 2, 2021, at 7:30pm. (**Exhibit K** – Denoia's Affidavit, ¶11and **Exhibit L** –Accom. Denial).  This left him with 13-days to find a new role. (Dkt. #45-1, pg. 9).  The "trainer" role he applied for was the only one he saw available. (Ex. C, pg. 81:5-13 & 82:10-14)

9) *Plaintiff was able to find an alternative position within Roche. (Dep. Plaintiff 81-82).*

**DISPUTED/CLARIFIED**:   As a "Clin Solutions Implementation Engineer," Denoia made a salary of roughly $142k in 2021. (**Exhibit M** –2021 Earnings).  On November 17, 2021, Denoia was forced to either be terminated or accept a lesser role as a "Trainer/Designer-Fixed Term" for $99,264. (**Exhibit N** –Fixed Term Role).  Having no other option he accepted the lesser role. (Ex. K, ¶15).

10) *Roche employed nearly 4,000 employees in the United States, all of whom were subject to its vaccine mandate, in 2021. (Dec. Ricchio at ₧ 10). As to religious exemptions, Roche received 99 requests for religious accommodation. (Dec. Ricchio at ₧ 11). Roche approved 62 of the requests and denied 37 of the requests. (Dec. Ricchio at ₧ 11).*

**DISPUTED/CLARIFIED**:  This would amount to less than 1.5% of Roche's employees being unvaccinated.

*11) Customer-facing positions were important in 2021 because many Roche customers were hospitals or other healthcare organizations that imposed vaccination requirements. (Dec. Ricchio at ¶ 27). Many of these COVID-19 vaccinations were imposed through the entities' credentialing process.*

**DISPUTED/CLARIFIED**:   Roche fails to identify if any of Denoia's customers required vaccination.  When asked to "name one" customer or client, vendor credentialing site, or healthcare facility that barred unvaccinated (i.e. Denoia) individuals from entering its premises, Roche could not do so. (**Exhibit O** – Roche's 1st 30b6 Depo., pg. 37:13-40:7, 61:8-22, 64:2-65:6, 68:9-19).[6]

Pursuant to Roche guidelines on September 23, 2020, in-person interactions were occurring "as allowed by customer institutions." (**Exhibit P** –Sept. 9, 2021, *FAQ*, pg. 14).   Roche stated that before visiting a customer, individuals were to, "please check with the specific customer site to ensure they are allowing visits." (*Id.*).  Roche's guidance continued by stating, "Proactively reach out to customers to understand how you can most effectively support them during this time and understand the protocols associated with in-person visits from Sales Representatives. Always use your PPE when visiting a customer site. If there are options to meet with your customer remotely, take advantage of this option." (*Id.* at 16).  Roche testified to the same. (Ex. O, pg. 68:20-70:7).  During the relevant time period, visiting Roche's Indianapolis office was Denoia's only in-person interaction. (Ex. C, pg. 77:20-23).

On November 12, 2021, Roche stated that it would permit unvaccinated customers to visit its locations. (**Exhibit Q** –Nov. 12, 2021, Update).  Roche continued by noting that, "Suppliers performing services on campus are not considered visitors and their vaccination compliance is managed separately by their employer." (*Id.*).  It is unclear how exposing its workforce to unvaccinated customers/suppliers did not pose a "risk" but Denoia working remotely with customers did pose a risk. (Dkt. #44, pg. 7).

In discovery, Roche was asked to identify all customers that Denoia was required to visit and if they permitted vaccine exemptions. (**Exhibit R** - Roche's Response to 1st Set of Discovery, Int.

---

[6] It is important to note that even though Ryann Ricchio was presented on Roche's behalf as being knowledgeable of said information, she testified that "business leadership" told her of this credentialing hardship but could not provide specifics. (Ex. O, pg. 37:13-39:12).  Ryan Stephens, on behalf of Roche, similarly could not identify said undue hardship. (*Id.* at 172:16-173:9).

#13).  Denoia similarly requested any information/documents outlining this undue hardship. (*Id*. at Int. #1 & RFPD 38). Nothing was produced nor was a customer identified. (**Exhibit S** –37-1 Correspondence).  Roche did at least admit that it was unaware of any instance where a customer refused to interact with Denoia due to his unvaccinated status. (Ex. I, RFA #1).

*12) Most important, the credentialing process did not consider medical or religious exemptions for non-employee vendors to the entities. (Dec. Ricchio at ❡❡ 27).*

**DISPUTED/CLARIFIED**:   Said assertion is factually inaccurate and violates federal law.[7] Roche notes that its customers are "hospitals or healthcare organization" or "federal contractors. (Dkt. #44, pg. 7 and Ex. O, pg. 48:19-23).  Healthcare facilities and federal contractors are subject to federal anti-discrimination laws and were subject to OSHA's covid vaccine mandate, which was stayed on November 12, 2021, and ruled unconstitutional on January 13, 2022.[8] Pursuant to the U.S. Supreme Court, these entities still had to respect religious/medical accommodations.[9]  When asked about this, Roche testified (incorrectly) that any employer with a similar covid vaccine mandate may discriminate against its vendors without permitting exemptions. (Ex. O, pg. 67:3-11).

*13) The Accommodation Team ultimately concluded that Plaintiff's IT Service Engineer position was customer-facing and that Plaintiff could not be accommodated in the IT Service Engineer positon without the COVID-19 vaccination. (Dec. Ebrahimi at ❡❡ 20-21); (Dec. Ricchio at ❡ 32).*

**DISPUTED/CLARIFIED**:   Roche fails to support said assertion with anything besides self-serving affidavits.[10]  Denoia's accommodation was specifically denied because, "[c]ustomers and/or their Vendor Credentialing Organization **may** require Company employees to provide proof of the COVID-19 vaccine before accessing their location. (emphasis added) (Dkt. #45-1, pg. 14).[11]

---

[7] The "credentialing process" involves the customer, working with an outside vendor, to make sure Roche employee's "have a lot of things." (Ex. O, pg. 166:13-167:13).  Roche fails to explain how an individuals medical/religious accommodation does not factor into this process.
[8] *BST Holdings, L.L.C. v. Occupational Safety & Health Admin., United States Dep't of Lab.,* 17 F.4th 604 (5th Cir. 2021); *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.,* 595 U.S. 109, 142 (2022)
[9] The Supreme Court ruling upholding the Medicare rules on January 13, 2022, still required religious and medical exemptions. *Biden v. Missouri*, 595 U.S. 87, 89 (2022). In *JOEY LEE, Plaintiff, v. SEASONS HOSPICE, a Minnesota non-profit corporation, Defendant. MARY ROBSAHM & KELLY MOEN, Plaintiffs,* 2023 WL 6387794, at *3 (D. Minn. Sept. 29, 2023), the court denied the employer's motion to dismiss as the CMS rule "*require[d]* providers to offer medical and religious exemptions[.]" *Id*. (citing *Biden v. Missouri*, 142 S. Ct. 647, 651 (2022)).
[10] *See* L.R. 56-1(e) and *Dennis v. Potter*, 2015 WL 5032015, at *3 (N.D. Ind. Aug. 25, 2015) (citing cases).
[11] In Roche's accommodation notes, it stated under "approval status" that Denoia's accommodation was "Denied (vendor credentialing)." (Ex. D).

Denoia requested said information in discovery but nothing was produced outlining the above. (Ex. R, Int. #15 & 16 and RFPD 38).[12]  Further, it should be noted that Denoia's accommodation was not denied because he did not have a sincerely held belief; rather it was denied because of an alleged undue hardship. (Dkt. #45-1, pg. 14 and Ex. D).[13]

*14) Roche determined that it could not administratively keep up with the varied credentialing processes of its customers, that in-person customer visits were important to Roche's business, that the lack of the COVID-19 vaccination placed customer employees and patients at risk, and Roche could not staff the IT Service Engineer position without having all of the six employees vaccinated and able to visit all Roche customers. (Dec. Ebrahimi at ⁋ 21); (Dec. Ricchio at ⁋ ⁋ 15 and 28).*

**DISPUTED/CLARIFIED**:   Roche fails to support said assertion with anything besides self-serving affidavits.[14]  Denoia was never asked about vendor credentialing during his deposition. During his tenure, only employees that were routinely visiting customers (i.e. sales representatives) were required to submit to credentialing. (Ex. K, ¶3-4).  During his roughly 20 years with Roche, Denoia was only required to submit to credentialing one time. (*Id*.).  As noted, the overwhelming majority of his job duties were remote and in the rare time he had to visit customers, he was not required to submit to credentialing. (*Id*.).  When asked what would happen if he was asked to visit a customer prior to November 15, 2021, Denoia testified, "Well, at the end of my ITSE before I switched over [to his lesser role], even though it was past the time [i.e. November 15, 2021], they were willing to send me to a site [without going through credentialing]." (Ex. C, pg. 77:4-9).

The remaining points are refuted by Roche's own actions.  Roche requested that its employees, not Roche, both verify and adhere to each customer's covid protocols. (Ex. P, pg. 14 and Ex. O, pg. 68:20-70:7).  Masks, social distancing, and weekly testing, the preferred accommodation by Roche for anyone with an approved accommodation or visitors to its locations, were required to lessen the spread of covid, which Denoia adhered to in his lesser role. (Ex. P, pg. 5 and Ex. T).

*15) In 2022, once the Policy was implemented, the IT Service Engineer position returned to regular customer contact. (Dec. Ebrahimi at ⁋⁋ 27-28).*

---

[12] That is because Roche is unaware of any customers/vendors that required this. (Ex. O, pg. 37:13-40:7, 61:8-22, 64:2-65:6, 68:9-19).

[13] This point is furthered by the fact that Denoia's accommodation was approved in his lesser role. (**Exhibit T** – Denoia's Accom. Approved in His Fixed Term).

[14] *See* L.R. 56-1(e) and *Dennis v. Potter*, 2015 WL 5032015, at *3 (N.D. Ind. Aug. 25, 2015) (citing cases).

**DISPUTED/CLARIFIED**:   Roche fails to support said assertion with anything besides a self-serving affidavit.[15] The Mandate took effect on November 15, 2021, not 2022. (Dkt. #44, pg. 1). Setting that aside, Roche admits that Denoia's former role was non-customer facing until 2022, meaning he could have continued in the role with an accommodation after November 15, 2021.

*16) In-person customer meetings are an essential function of the IT Service Engineer position.*
**DISPUTED/CLARIFIED**:   Denoia's former role could be performed "remote and/or on-site." (Ex. A, pg. 2-3).

*17) Plaintiff admits that he has no direct evidence of the duties and responsibilities of the IT Service Engineer position after November 15, 2021. (Dep. Plaintiff at 107).*
**DISPUTED/CLARIFIED**:   Denoia testified that he spoke to Stephen Sweeney ("Sweeney"), a Clin Solutions Implementation Engineer, and Sweeney told him that no one goes on-site anymore. (Ex. C, pg. 107:2-19).  Specifically, Roche uses outside contractors for in-person duties. (*Id.*). Roche acknowledged this fact in discovery but refused to produce any documents. (Ex. I, Int. #17).

*18) Plaintiff recalls being vaccinated on one occasion. (Dep. Plaintiff at 58-59).*
**DISPUTED/CLARIFIED**:   Denoia received the Tetanus shot but "not by choice" as it was administered through his IV without his knowledge beforehand. (Ex. C, pg. 58:18-59:17).

*19) As to the COVID-19 vaccines, Plaintiff's reasoning for not getting the vaccine is very simple…(Dep. Plaintiff at 46).*
**DISPUTED/CLARIFIED**:   Roche disputes its own point in the very next sentence by noting why Denoia could not receive the vaccine (i.e. it was in opposition to his sincerely held religious beliefs). (Dkt. #44, pg. 8).

*20) Plaintiff provided two reasons why he objected: "Aborted fetal cells and genetic manipulation, two things I do not believe in." (Dep. Plaintiff at 46).*
**DISPUTED/CLARIFIED**:   Denoia stated a third in his accommodation request (i.e. "Mark of the Beast"). (Ex. D).  When asked "where" his religious beliefs against abortion came from, Denoia testified that he believed "abortion was bad" and that, "you can't kill babies. That's like against God." (Ex. C, pg. 46:15-21 & 55:4-5).  As to "genetic manipulation" Denoia summarized his belief as "the body is a temple" and "In other words, God made you one way, you're supposed to remain that way. Not to be altered by man" and he cannot, "take something that could cause me harm or cause the temple to, if you will, crumble." (*Id.* at 46:22-47:1, 49:7-10, 64:16-65:1, and 75:1-2).

---

[15] *See* L.R. 56-1(e)) and *Dennis*, 2015 WL 5032015, at *3.

*21) Rather, Plaintiff did internet research and spoke to friends. (Dep. Plaintiff at 57 and 67).*
**DISPUTED/CLARIFIED**:   Neither party disputes that the covid vaccines utilized aborted human

fetal cells in their creation.[16] [17]   Denoia looked up said fact on the Internet like every other person

in the US and then discussed said fact with his friends/coworkers (i.e. shared his religious beliefs).

(Ex. C, pg. 70:1-19 and Ex. K, ¶10).

*22) As to fetal cells, Plaintiff states: "They are used in the development as far as I know."*
**DISPUTED/CLARIFIED**:   See Disputed Paragraph 20 and 21.

*23) As to gene manipulation, Plaintiff believes two of the three vaccines changed DNA.*
**DISPUTED/CLARIFIED**:   See Disputed Paragraph 20.

*24) Discovery has shown that Plaintiff did not file a charge with the Equal Employment Opportunity Commission (the "EEOC") until March 27, 2023.*
**DISPUTED/CLARIFIED**:   On November 4, 2021, Denoia filled out an EEOC "Inquiry

Information" (i.e. intake questionnaire). (Dkt. #45-1, pg. 25 and **Exhibit U** - EEOC Inquiry).  Said

Inquiry was not signed by Denoia. (*Id*.).

    On May 19, 2022, Denoia filed a signed EEOC Charge with the EEOC. (Dkt. #45-1, pg. 24 and

**Exhibit V** - EEOC Charge).[18]   Denoia initiated the EEOC process and filed said Charge on his

own. (Ex. C, pg. 93:2-10). The document states EEOC "Charge of Discrimination" at the top. (Ex.

V pg. 2).  Said form includes all of the necessary information requested in a charge. (*Id*.).  The

"Signature and Verification" portion states, "I understand this charge will be filed with both the

EEOC and the State or local Agency, If any" and "I understand by signing below that I am filing a

charge of employment discrimination with the EEOC." (*Id*)  Said EEOC Charge was then signed

by Denoia and emailed to the EEOC (i.e. verified and perfected). (*Id*. at 1-2).[19]   Said EEOC Charge

conformed with the requirements under 29 C.F.R. § 1601.9 & 12.

---

[16] Are the vaccines made with fetal cells? | ICSI (archive.org) (last visited Nov. 21, 2023); Johnson & Johnson Vaccine - TN COVID-19 Hub (archive.org) (last visited Nov. 21, 2023) (acknowledging the Johnson & Johnson vaccine was developed from a fetal cell line) (last visited Nov. 21, 2023); Do the COVID-19 vaccines contain aborted fetal cells? | Nebraska Medicine Omaha, NE (archive.org) (last visited Nov. 21, 2023); Los Angeles County Public Health, *COVID-19 Vaccine and Fetal Cell Lines*, Wayback Machine (archive.org) (last visited Nov. 21, 2023).
[17] During Denoia's deposition, Roche's counsel claimed that there was, "[US] Supreme Court authority that says COVID vaccines are not manufactured using fetal cell lines, nor do they contain any aborted cells?" (Ex. C, pg. 55:15-18).  Roche's counsel then attempted to confuse/mislead Denoia during his deposition with said false claim. (*Id*. at 55:20-21).  Oddly, this precedent is nowhere in Roche's Brief.
[18] "Where the document on its face constitutes a charge…the charge is deemed to be filed with the Commission upon receipt of the document. Such filing is timely if the charge is received within 300 days from the date of the alleged violation." 29 C.F.R. § 1601.13(ii)(A)
[19] The EEOC noted on May 23, 2022, that "a charge is formalized" and "case status changed from Inquiry Submitted to Charge filed." (Dkt. #45-1, pg. 24).

Rather than adhere to statutory requirements, the EEOC oddly determined on May 23, 2022, that said EEOC Charge was "unperfected" and until Denoia submitted to an interview the EEOC, it would not deem said EEOC Charge a "final Charge of Discrimination." (**Exhibit W** – 5-23-22 EEOC Email).[20] Said "interview" is performed after a charge has been filed and through the course of the EEOC investigation. 29 C.F.R. § 1601.15. It is not a prerequisite to filing an EEOC Charge.

*25) In addition, although the Complaint asserts claims under Arizona law, the first charge, EEOC Charge No. 470-2022-00528 (the "First Charge"), was dual filed in Indiana, not Arizona.*
**DISPUTED/CLARIFIED**:   Patricia Miner ("Miner"), Supervisory Investigator EEOC/Phoenix District Office, accepted the charge and "Selected Deferral Office: Indiana Civil Rights Commission." (Dkt. #45-1, pg. 24 (*May 23, 2021, notes*) and 30 (*as to title*)).

*26) The second charge of discrimination, EEOC Charge Number 470-2023-02637 (the "Second Charge"), does not include any dual filing state. (Dep. Plaintiff at Ex. 11).*
**DISPUTED/CLARIFIED**:   Denoia's Amended EEOC Charge was filed on September 28, 2023, with Miner (i.e. the Arizona office).[21] (Dkt. #45-1, pg. 17 (*Oct. 4, 2021, notes*), 43, & 45 and **Exhibit W** – Amended EEOC Charge). This was one day after his charge was labeled "closed." (Dkt. #45-1, pg. 17)

*27) The First Charge is an unperfected charge. (Dep. Plaintiff at Ex. 16).*
**DISPUTED/CLARIFIED**:   Roche fails to cite any evidence for said assertion.[22]  See Disputed Paragraph 24 and the attached signed EEOC Charge. (Ex. V).

*28) The First Charge was unsigned when submitted. (Dep. Plaintiff at Ex. 16). Plaintiff admits that he did not file anything else with the EEOC. (Dep. Plaintiff at 105).*
**DISPUTED/CLARIFIED**:   See Disputed Paragraph 24 and the attached signed EEOC Charge. (Ex. V).

*29) Plaintiff further admits that he checked the EEOC portal every couple of weeks.*
**DISPUTED/CLARIFIED**:   Denoia testified that he looked at the portal, "Probably every couple of weeks, maybe. I mean, I wasn't looking at it every single day. My understanding was I would file it and they would reach out to me. That was my understanding." (Ex. C, pg. 94:21-24).  He continued by testifying that he reviewed the portal "periodically" and his "understanding was, [the

---

[20] Said email also noted that, "The Charge of Discrimination you submitted is considered an unperfected filing which stops the 300 day deadline from continuing to run." (Dkt. #45-1, pg. 30).
[21] "A charge may be made using the EEOC's designated digital systems, in person, by facsimile, or by mail to any EEOC office or to any designated representative of the Commission." 29 C.F.R. § 1601.8.
[22] Said cited deposition page does not support said assertion.

EEOC] were going to contact me because my next step was to talk to somebody and they would tell me whether or not I had a case. That was what I was waiting on." (*Id*. at 95:9-13). He concluded by noting that, "I [had] never done this before, had no idea what I was doing. I was trying to follow the directions as they had them." (*Id*. at 95:14-16).

30) *On July 21, 2022, Plaintiff spoke with an EEOC investigator about his allegations. (Dep. Plaintiff at Ex. 19). The EEOC notes reflect that "PCP **AGREED** NOT to file a Charge of Discrimination. (Dep. Plaintiff at Ex. 19, pg. 2). Plaintiff recalls this conversation. (Dep. Plaintiff at 111). The EEOC Log notes also state that Plaintiff "does not want to file a charge." (Dec. Ricchio at Exhibit 3, pg. 6). The EEOC Log note further states that a right to sue letter would be issued.*

**DISPUTED/CLARIFIED**:    In regard to the July 21, 2022, interview, Denoia testified that:

> The way I understood the call was she said I didn't have anything to file…That's what she told me. She said she didn't see -- The way I understood this, I was going to talk to them to get the right to sue. In other words, I needed to go through them, and if they felt that I had a right, they would -- to sue, they would give me the okay. What I got from the call was that I didn't have a case currently, and I would have to wait until I was discharged. In other words, she didn't see where I was under hardship, or something along those lines. And that I would have to file again after I was dismissed. That's what I understood – That was my takeaway from the call, which it was quite disheartening. But that's how I understood it. I didn't realize I was telling her what I was going to do; I was looking to her to tell me what I could do.

(Ex. C, pg. 112:6-7 & 112:11-113:5).  When asked to clarify his testimony, Denoia testified that he understood what the EEOC said to mean that his charge had no merit. (*Id*. at 113:7-11).

31) *Nonetheless, in order to provide Plaintiff with every opportunity to file a charge, the EEOC sent an email to Plaintiff on July 22, 2022. (Dec. Ricchio at Ex. 7). The email attached a proposed charge of discrimination. (Dec. Ricchio at Ex. 7).*

**DISPUTED/CLARIFIED**:    Dkt. 45-1, pg. 36 is identical to the EEOC Charge Denoia submitted on May 19, 2022. (Ex. V).[23]

32) *The EEOC Log does not reflect that Plaintiff submitted a signed charge after the July 22, 2022 email. (Dec. Ricchio at Exhibit 3).*

**DISPUTED/CLARIFIED**:    See Disputed Paragraph 24.

33) *Plaintiff further admits that he has his own mailbox. (Dep. Plaintiff at 101).*

**DISPUTED/CLARIFIED**:    Denoia lives in an apartment. (Dkt. #44, pg. 11). When asked about his mailbox, Denoia confirmed it was a "box with lots of apartments on the box." (Ex. C, pg. 101:12-13).

34) *Plaintiff finally admits that he was receiving mail in 2022. (Dep. Plaintiff at 101). The only mail that he claims was late was a birthday card from his father. (Dep. Plaintiff at 100-101).*

---

[23] Dkt. 45-1, pg. 36 and Ex. V contain (1) the same information for Denoia, (2) the same information for Roche, (3) selected "religion" as discrimination, (4) listed the same date of discrimination, and (5) alleged that Denoia was denied a religious accommodation.

**DISPUTED/CLARIFIED**:   Denoia admitted that he routinely did not receive expected mail and he received other tenant's mail. (Ex. C, pg. 100:6-101:16).[24]  Denoia testified that he did not receive the Right to Sue notice via mail. (*Id*. at 100:6-9).

*35) On September 26, 2022, Plaintiff got email notice that there was a new document available through the EEOC portal. (Dec. Ricchio at Ex. 3, pg. 2). The Log further reflects that on October 4, 2022 the EEOC again emailed Plaintiff to let him know that a document was available for review on the EEOC portal. (Dec. Ricchio at Ex. 3, pg. 2).*

**DISPUTED/CLARIFIED**:   A Right to Sue is only issued after the "investigation of a charge…." (i.e. a charge has to be submitted for this to occur).29 C.F.R. § 1601.19(a).  Denoia testified that he did not receive the Right to Sue via mail or email. (Ex. C, pg. 99:10-11 and 100:9 and Ex. K, ¶16).

Denoia filed his Amended EEOC Charge on September 28, 2022, through counsel. (Dkt. #45-1, pg. 17, 43, & 45 and Ex. X).  On October 4, 2022, Marisol Bingochea ("Bingochea") confirmed receipt of said Amended EEOC Charge and uploaded it onto the portal. (Dkt. #45-1, pg. 17).  In essence, the EEOC was on notice of Denoia's counsel's representation as early as September 28, 2022, and as late as October 4, 2022. (Dkt. #44, pg. 11 & #45-1, pg. 17). Yet, notice of the Right to Sue was not emailed to Denoia's counsel.

Further, on February 6, 2023, Bingochea emailed Denoia's counsel and claimed that "there is no record of your firm representing the Charging Party.  As such, we are not able to discuss any information with you." (Dkt. #45-1, pg. 16-17 (*Feb. 6, 2023 notes*) and **Exhibit Y** - 2-6-23 EEOC Email).  On February 8, 2023, Bingochea emailed Denoia's counsel and stated for the first time that, "on September 28, 2022, you requested to amend the charge which is after the EEOC issued a Notice of Right to Sue on September 26, 2022. The EEOC will not take any further action to the referenced charge." (Dkt. #45-1, pg. 16 and **Exhibit Z -** 2-8-23 EEOC Email).[25]  On February 21, 2023, Miner confirmed that neither of the Right to Sue notices that were emailed to Denoia were accessed or viewed by Denoia or his counsel. (Dkt. #45-1, pg. 16 and **Exhibit AA -** 2-21-23 EEOC Email).  Miner specifically stated that, "I do not reflect the Charging Party accessed the record until December 31, 2022.  There is no indication the Charging Party downloaded any documentation from his portal account." (*Id*.).

---

[24] During his testimony, he provided an example of received a birthday card from his father a month after his birthday and the fact that he routinely received other tenant's mail in his mailbox. (Ex. C, pg. 100:15-101:6 & 101:14-16).

[25] On February 15, 2023, Bingochea's employment with the EEOC ended. (**Exhibit DD** - Bingochea Terminated).

The Right to Sue notes that, "Receipt generally occurs on the date that you (or your representative) view this document" and "Receipt generally means the date when you (or your representative) opened this email or mail." (Dkt. #45-1, pg. 40 and **Exhibit BB** - Right to Sue). In essence, the EEOC has confirmed that Denoia did not open said email notice or view/download the Right to Sue until December 31, 2022. (Ex. AA).

*36) On September 28, 2022, after the Right to Sue Notice was issued and the charge was closed, Plaintiff's counsel emailed the EEOC investigator seeking to amend the charge.*
**DISPUTED/CLARIFIED**:   See Disputed Paragraph 35.

*37) The EEOC Log does not reflect that Plaintiff's counsel checked the EEOC portal until December 8, 2022. (Dec. Ricchio at Ex. 3).*
**DISPUTED/CLARIFIED**:   Even though the EEOC log states that, "Correspondence with Charging Party Attorney/ Representative & FileName: Amended Charge - Denoia v. Roche Diagnostics Corporation (*sic*)," Denoia's counsel did not email the EEOC or correspond with the EEOC on December 8, 2022.

*38) On February 8, 2023, the EEOC emailed Plaintiff's counsel to verify that Plaintiff sought to amend the charge after the charge had been dismissed by the EEOC. (Dec. Ricchio at Ex. 11).*
**DISPUTED/CLARIFIED**:   See Disputed Paragraph 34.

*39) To leave no doubt that the First Charge was not perfected, Plaintiff's FOIA request was made on March 29, 2023. (Dec. Ricchio at Ex. 1, pg. 1). On that same date, the Log reflects that Plaintiff downloaded the "Charge of Discrimination – Unperfected. . . ." (Dec. Ricchio at Ex. 3, pg. 1).*
**DISPUTED/CLARIFIED**:   See Disputed Paragraph 24.

*40) Incredibly, despite having Plaintiff's EEOC portal information, Plaintiff's counsel admits that counsel did not access the EEOC portal until late 2022 – more than three months after they were retained. (Doc. #15 at ¶¶31).*
**DISPUTED/CLARIFIED**:   Denoia's counsel accessed the EEOC portal via Denoia's log in information on September 20, 2022 (i.e. prior to the Right to Sue being issued on September 26, 2022). (**Exhibit CC** – 9-20-22 Counsel Email).  Denoia's counsel submitted Denoia's Amended EEOC Charge on September 28, 2022, via email to the noted point of contact Sharon Liebman. (Dkt. #45-1, pg. 17, 43, & 45 and Ex. X).  After submitting said Amended EEOC Charge, the EEOC internally confirmed receipt as late as October 4, 2022, which should have prompted notice being sent to Denoia's counsel of the issued Right to Sue. (Dkt. #45-1, pg. 17)  Rather than do this, the EEOC, through Bingochea, ignored Denoia's counsel's notice of representation. (Dkt. #45-1, pg. 16-17, Ex. Y and Z).

### B.  Plaintiff's Statement of Additional Material Facts

1)  As an alternative to receiving the Covid-19 vaccine, Denoia agreed to wear a mask, test weekly (or more if necessary), and social distance while working in his prior role. (Ex. K, ¶13).

2)  As an additional accommodation, Denoia offered to move to Montana, where covid mandates were outlawed under State law. (**Exhibit EE** – Relocation Accom. and Ex. C, pg. 84:10-87:20).  Roche never confirmed whether this would result in an approved accommodation in his alleged customer facing role prior to November 15, 2021. (Ex. C, pg. 84:10-87:20).

3)  Denoia has consistently lived out and practiced his sincerely held beliefs, which includes daily worship, prayer, and Bible study. (Ex. K, ¶2).

4)  Denoia believes that the use of vaccines derived from aborted fetal cells goes against his sincerely held religious beliefs. (Ex. D and Ex. K, ¶5-6). Specifically, the killing of an unborn child is murder; therefore, the use of aborted fetal cells in said covid vaccines prevented him from receiving the covid vaccines. (*Id.*).

5)  Roche approved religious accommodations for others with beliefs similar to Denoia. (**Exhibit FF** – Roche Accom. Excel (Similar Beliefs).[26]  Roche agreed that the sincerity of an individual's held belief is a "credibility" question. (Ex. O, pg. 73:17-21).

6)  Roche cannot point to one instance where an unvaccinated employee was not permitted to visit a customer due to being unvaccinated. (Ex. O, pg. 172:16-173:11 and Ex. R, Int #15).

7)  While in his prior customer facing role, Denoia adhered to Roche's policy of wearing a mask, submitting to testing, and social distancing. (Ex. C, pg. 77:20-79:2 and Ex. K, ¶13).  Denoia successfully performed his duties and interacted with co-workers, when required to come into the office, while being unvaccinated from March 2020 to November 15, 2021, without incident. (Ex. C, pg. 77:20-79:2 and Ex. K, ¶13).  Denoia is unaware of any co-worker that refused to work with him or any customer that refused to meet with him due to his vaccination status. (*Id.* at ¶14).  Similarly, Roche never informed Denoia of any concerns with his vaccination status or that he may have spread covid to others prior to November 15, 2021. (*Id.* at ¶14).

---

[26] It is reasonable to infer that at least one of these individuals objected due to aborted fetal cells, mark of the beast, or their body is a temple.  Further, the excel lines on Ex. FF do not correspond with those in Ex.'s H and J due to additional names.

8) Roche testified that its interactive process did not involve an actual review of undue hardships because once the individual was determined to be in a "customer-facing" role they were required to be vaccinated regardless. (Ex. O, pg. 33:20-34:10).

9) When asked if Denoia could visit a customer in-person that permitted unvaccinated individuals, Roche testified "not necessarily" because, "those customer requirements could have changed at any point in time, and they were very dynamic as the pandemic continued." (Ex. O, pg. 43:24-44:2). Roche later admitted that even if the customer permitted an employee to visit unvaccinated, their accommodation would be denied. (*Id.* at 57:18-22).

10) Roche is the sixth largest pharmaceutical company in the world.[27] Said profits increased in 2021[28] and 2022.[29] [30] Roche admitted that it "can't put a dollar value" to the alleged administrative cost it would have incurred had Denoia's accommodation been approved. (Ex. O, pg. 61:23-63:11 and 70:8-18).

11) Roche's medical and religious interactive process involved an "individual assessment." (Ex. O, 25:22-24). So, it is unclear why the alleged hardships (as to costs) are being examined in the aggregate. (Ex. O, pg. 62:14-20).[31]

## LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure states that "summary judgment shall only be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden rests squarely with the party moving for summary judgment to demonstrate that there is an absence of evidence to support the non-moving party's case. *Roe v. Railroad Donnelley &amp; Sons, Co*., 42 F.3d 439, 443 (7th Cir. 1994). To withstand a motion for summary judgment, the non-movant need not match witness for witness, nor persuade the court that the non-movant's case is convincing; the non-movant must only come forward with appropriate evidence demonstrating that there is a pending dispute of

---

[27] Roche - Statistics & Facts | Statista
[28] ar21e.pdf (roche.com) (sales of $62.8 billion) (last visited May 16, 2024).
[29] Roche | Roche's Annual Report 2022 and ar22e.pdf (roche.com) (sales of $63.3 billion) (last visited May 16, 2024).
[30] Roche noted that its sales fell in 2023 due to the covid pandemic ending. Roche | Roche's Annual Report 2023 and ar23e.pdf (roche.com) (sales of $58.7 billion) (last visited May 16, 2024).
[31] Roche already testified it could not identify any customers/vendors/hospitals/etc. (Ex. O, pg. 37:13-40:7, 61:8-22, 64:2-65:6, 68:9-19).

material fact. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994). The record and all reasonable inferences that may be drawn from it are viewed in a light most favorable to the party opposing the motion. *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995) cert. denied, 115 S. Ct. 2249 (1995). The Court must resolve "all evidentiary conflicts in [Plaintiff's] favor and accord [Plaintiff] the benefit of all reasonable inferences that may be drawn from the record." *Harden v. Marion Cnty. Sherriff's Dep't*, 799 F.3d 857, 859 (7th Cir. 2015) (citing *Coleman v. Donahoe*, 667 F.3d 835, 842 (7th Cir. 2012)). Evaluating credibility, weighing evidence, and drawing factual inferences are all functions for a jury at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Here, when the evidence, all facts and all inferences are resolved in Denoia's favor, it is clear that genuine issues of material fact exist that must be resolved by a jury. As such, Defendant's Motion for Summary Judgment must be denied.

## **LEGAL ARGUMENT**

### I.  **Plaintiff Properly Submitted an EEOC Charge Prior to Litigation**

Roche argues that Denoia never submitted an EEOC Charge prior to his current lawsuit. Said argument is not supported by the relevant facts/evidence.

#### *a.  Denoia's EEOC Charge was Timely Filed on May 19, 2022*

In its argument, Roche intentionally ignores Denoia's timely filed EEOC Charge, which was filed on May 19, 2022 (i.e. within 300-days of his denied accommodation on November 15, 2021). (Ex. V). Denoia initially filled out and submitted the EEOC questionnaire on November 4, 2021. (Dkt. #45-1, pg. 25 and Ex. U).[32]  Then on May 19, 2022, he signed, and submitted the EEOC's "Charge of Discrimination" form. (Ex. V).[33]  Said Charge conforms with the requirements under 29 C.F.R. § 1601.9 & 12.  There is no explanation by the EEOC why Denoia's May 19, 2022, Charge was deemed to be "unperfected" but said determination violates statutory requirements and

---

[32] Denoia is not arguing this amounts to a submitted eeoc charge but the Seventh Circuit agrees that if it had been signed it would amount to a properly submitted EEOC Charge. *Philbin v. Gen. Elec. Cap. Auto Lease, Inc.*, 929 F.2d 321, 323 (7th Cir. 1991).
[33] "[C]harges shall be in writing under oath or affirmation [.]" 42 U.S.C. § 2000e–5(b). The verification requirement "is meant to provide some degree of insurance against catchpenny claims of disgruntled, but not necessarily aggrieved, employees." *Edelman v. Lynchburg College*, 535 U.S. 106, 115 (2002). Denoia signed the May 19, 2022, Charge. (Ex. V)

relevant caselaw.[34]  Therefore, Denoia properly submitted a charge of discrimination with the EEOC.

### b. *Denoia's Properly Amended his EEOC Charge on September 28, 2022*

If the Court disagrees with the above, Denoia properly submitted his Amended EEOC Charge on September 28, 2022.  Pursuant to 29 C.F.R. § 1601.12(b), "A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments…related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received."  Denoia's Amended Charge was filed on September 28, 2022, and received by the EEOC as late as October 4, 2022. (Dkt. #45-1, pg. 17).  Therefore, any issues with his May 19, 2022, Charge were cured.

## II.  Plaintiff Timely Filed His Lawsuit

Next, Roche argues that (1) Denoia received the right to sue simply because it was mailed to the same address he had on record with the Defendant and (2) because it was emailed to him.  The issue with Roche's first argument is that the Defendant cites the wrong standard and misapplies Seventh Circuit precedent to argue there is a presumption that the Notice was received within 5-days, when the Seventh Circuit's standard requires "actual notice." (See 42 U.S.C. § 2000e–5(e)(1)).  The issue with Roche's second argument is that our case is both distinguishable in the facts and Denoia is making additional arguments that were not made in the cases cited by Roche.

As outlined below and agreed to by the EEOC, Denoia did not receive actual notice of the Right to Sue until December 31, 2022.  Should the Court disagree, Denoia was not permitted the chance to receive actual notice prior to December 31, 2022, due to no fault of his own and equitable tolling should be permitted.  Each argument is addressed below:

### a. *Roche Applies the Wrong Standard and Cites Inapplicable Caselaw in its Motion*

---

[34] Contrast our case with *Carlson v. Christian Bros. Servs.*, No. 15 C 1154, 2015 WL 7568452, at *1-2 (N.D. Ill. Nov. 25, 2015), *aff'd*, 840 F.3d 466 (7th Cir. 2016).  In *Carlson*, the plaintiff timely submitted a Complainant Information Sheet ("CIS") with the EEOC but not a perfected charge.  In Dismissing the complaint, the court noted that the CIS, "not only lacked all of the formalities of a charge (signature, verification, details), it failed to include any hint that Carlson was requesting action on the part of the EEOC, and the form expressly stated that it was not a charge." *Id*. at *4.  Opposite of *Carlson*, Denoia's EEOC Charge contains his signature, verification, details of the claim; he submitted the charge to the eeoc; and the document submitted is titled "EEOC Charge of Discrimination." (Ex. V).

The 90-day period "begins to run on the date that the EEOC right-to-sue notice is actually received *either by the claimant or by the attorney representing him in the Title VII action.*" *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (2001) (emphasis in original) (quoting *Jones v. Madison Service Corp.*, 744 F.2d 1309, 1312 (7th Cir. 1984)).  Courts generally recognize "that a claimant should not lose the right to sue because of 'events beyond his or her control which delay receipt of the EEOC's notice.' " *Bobbitt v. Freeman Cos.*, 268 F.3d 535, 538 (7th Cir. 2001) (quoting *St. Louis v. Alverno Coll.*, 744 F.2d 1314, 1316 (7th Cir. 1984)). "However, when the claimant does not receive the notice in a timely fashion due to [his] own fault, the 'actual notice' rule does not apply." *Id.* (plaintiff at fault for failure to check her mail for six weeks); *e.g.*, *Alverno Coll.*, 744 F.2d at 1316–17 (plaintiff at fault for failure to notify the EEOC of address change).

Roche relies on *Loyd v. Sullivan*, 882 F.2d 218, 218 (7th Cir. 1989) for its presumption of 5-days as opposed to the "actual notice" standard.  *Loyd* dealt with social security, which included regulations permitting said presumption. *Id.* (See also 20 C.F.R. § 416.1401).  The Southern District has already examined *Loyd* and determined that it is not applicable in Title VII cases as the standard is "actual notice." *Tietjen v. Moe's Sw. Grill*, 2020 WL 1940723, at *4 (S.D. Ind. Apr. 22, 2020).[35]  Denoia did not receive a copy of the Notice until December 31, 2022, which the EEOC confirmed. (Ex. AA).

Defendant relies on *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 1724 (1984) and *Glover v. Sitel Corp.*, 2010 U.S. Dist. LEXIS 30248 (W.D. Wisc. March 29, 2010) for the inference that a letter is received 3-days after it was mailed.[36]  *Baldwin* was reviewed by the Southern District and found to not alter the "actual notice" standard. (*Jones v. St. Vincent Hosp.*, No. 1:11-CV-367-WTL-DKL, 2012 WL 777269, at *1 (S.D. Ind. Mar. 7, 2012). In *Glover*, the employer filed a motion to dismiss, which was not contested by the plaintiff. *Id.*  The employer (*similar to Defendant in our case*) attached the Notice to its motion, which the Court found to be "inadequate" to justify dismissal and denied said uncontested motion. *Id.* at *2.  Therefore, neither case is applicable, nor does it alter the "actual notice" standard. (*Gates v. Cook Inc*., No. 1:10-CV-

---

[35] *Tietjen* relies on *Fuentes v. Studio Movie Grill*, No. 18-CV-3706, 2019 WL 1897066, at *4 (N.D. Ill. Apr. 29, 2019), which held the same.
[36] Relying on Fed. R. Civ. P. 6(d), which was formerly outlined in (e).

0837-SEB-TAB, 2010 WL 4226436, at *2 (S.D. Ind. Oct. 20, 2010) (The 90 days begins to run upon plaintiff's "actual receipt" of the notice. 42 U.S.C. § 2000e–5(e)(1)).

When a claimant does not receive the notice in a timely fashion due to his own fault, the "actual notice" rule does not apply. *St. Louis v. Alverno College*, 744 F.2d 1314, 1316–17 (7th Cir.1984). The Defendant does not make this argument in its Motion and has waived it.[37][38]

Therefore, Denoia never received actual notice of the Right to Sue via mail and said argument should be disregarded.

### b. Court's Do Not Presume Notice of the Right to Sue via Email

Roche next argues that notice was received via email, which is "presumed" to have been "received the day the EEOC emails the charging party." (Dkt. #44, pg. 15). Setting aside that the EEOC confirmed that said notice was not received by Denoia until December 31, 2022, and that the Right to Sue language states the opposite, said "presumption" is factually inaccurate and not supported by the facts. (Ex. AA and Ex. BB).

The only case relied upon within the Seventh Circuit is *Moore v. R1 RCM*, 2023 WL 3047431 (C.D. Ill. April 4, 2023), which held that notice was received via email because the plaintiff did not argue, "receipt was delayed due to circumstances out of her control" nor that the "doctrine of equitable tolling" applied. *Id*. at *2. Denoia is specifically making said arguments.

*McNaney* is distinguishable as notice was received by plaintiff's counsel who did not open the email attachment. *McNaney*, 2022 WL 1017388, at *4. As noted, the EEOC confirmed receipt of Denoia's Amended EEOC Charge and counsel's letter of representation as late as October 4, 2022. (Dkt. #45-1, pg. 17). Then later claimed that it never received Denoia's counsel's letter of representation on February 6, 2023. (Ex. Y). Due to the EEOC's own mistake of not emailing notice to Denoia's counsel, *McNaney* is not applicable. (*Paniconi v. Abington Hosp.-Jefferson*

---

[37] Roche argues that Denoia admitted his mailing address was correct but does nothing to explain how it was his fault that he did not receive the right to sue via mail. (Dkt. #44, pg. 14). *In re Cook Med., Inc., IVC Filters Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2023 WL 7548765, at *2 (S.D. Ind. June 6, 2023) (noting "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived") (quoting *United States v. Useni*, 516 F.3d 634, 658 (7th Cir. 2008).

[38] Roche rehashes the same argument as to *Bobbit* and *Archie* that it made in its Judgment on the Pleadings. (Dkt. #19, pg. 5). In its Order denying said Motion, the Court noted that Roche's reliance on *Bobbit* was misplaced. (Dkt. 33, pg. 7). Further, as argued in his Response (Dkt. #20), *Archie* is not applicable as it upheld the "actual notice" standard. *Archie*, 585 F.2d at, 216

*Health*, 604 F. Supp. 3d 290, 293 (E.D. Pa. 2022) (Relied on *McNaney* due to plaintiff's counsel receiving notice, therefore *Paniconi* is similarly inapplicable).[39]

As argued, said email presumption is both incorrect and inapplicable to our current case. Therefore, said argument should be rejected.

### c.   Equitable Tolling is Warranted Given the EEOC's Actions

If the Court agrees that Denoia received notice before December 31, 2022, then circumstances exist that justify equitable tolling of Denoia's 90-day filing deadline.

The Seventh Circuit has adopted a three-pronged approach when examining the issue of when the 90–day limit began to run, and whether any equitable tolling of that limit is warranted. *Simmons v. Illinois Dep't of Mental Health & Developmental Disabilities*, 74 F.3d 1242 (7th Cir. 1996) (citing *Bond v. Am.Med.Ass'n,* 764 F.Supp. 122, 124 (N.D.Ill.1991).  First, in cases where the right to sue letter is mailed to the plaintiff's residence but received by someone other than the plaintiff, the 90–day period commences on the date the claimant "actually receives" the letter. *Archie v. Chicago Truck Drivers, Helpers and Warehouse Workers Union,* 585 F.2d 210, 216 (7th Cir.1978). Second, in cases where the right to sue letter is sent to plaintiff's attorney, the 90–day period begins to run when the attorney actually receives the notice. *Jones v. Madison Service Corp.,* 744 F.2d 1309, 1312 (7th Cir.1984). Finally, in cases where the plaintiff does not receive a right to sue letter for some other reason, a "fault" approach is used. This approach essentially asks whether the delay in bringing suit was the "fault" of the claimant and is determined on a case by case basis. *Jones,* 744 F.2d at 1313.

As stated by Denoia, he shares a mailbox with multiple individuals in his apartment complex. (Dkt. #44, pg. 11 and Ex. C, pg. 101:12-13).).  He also testified that he did not receive the Right to Sue through the mail. (Ex. C, pg. 100:6-101:16 & 100:6-9).  Because Roche fails to attach any evidence that Denoia actually received said notice through the mail, any inference is in his favor. (*Lomack v. Auth*., No. 96 C 4167, 2000 WL 1349173, at *4 (N.D. Ill. Sept. 18, 2000) (While Defendant does include a copy of the Receipt for Certified Mail, which does confirm that the letter

---

[39] See also *Miller v. City Mission*, 2023 WL 9002732, at *4 (W.D. Pa. Dec. 28, 2023) (Denying a motion to dismiss under similar circumstances as our current case).

was mailed, there is no record of delivery). Especially since this lack of receipt through the mail was confirmed through the EEOC. (Ex. AA). Therefore, the first approach is not applicable to our current case.

Under the second approach, the Court examines whether Plaintiff's counsel received Notice from the EEOC. As noted, the EEOC was aware of Denoia's counsel's representation as early as September 28, 2022, and as late as October 4, 2022, but actively ignored said representation until February 8, 2023. (Dkt. #45-1, pg. 17 and Ex.'s Y-Z). Essentially, the EEOC could have resolved this issue by simply forwarding a copy of the Right to Sue to counsel on or near September 28, 2022, when it learned Denoia had obtained counsel. Instead, the EEOC chose to ignore the filing of the amended charge and the existence of counsel. Therefore, said approach is not applicable to our current case.

Under the third approach, the Court looks to see who is at "fault" for the delayed filing. In this instance, the fault lies with the EEOC. (*Simmons*, 74 F.3d at 1242) (The "EEOC may be rightly criticized" in certain circumstances). There are three instances that the EEOC, through statutory requirements, could have resolved the issue at hand.

First, the Right to Sue must be issued, "to all parties." 29 C.F.R. § 1601.28.[40] Upon the EEOC's receipt of Denoia's counsel's Amended EEOC Charge and letter of representation, he became a "party" with the same notice requirements as any other party. This point is furthered by the fact that the EEOC described Denoia's counsel as "Charging Party's Attorney" internally as of October 4, 2022. (Dkt. #45-1, pg. 17). Had the EEOC simply emailed Denoia's counsel on or around October 4, 2022, as required by the statute, the dispute at issue would have been resolved.

Second, when information is submitted and said, "[i]nformation discloses that a person is entitled to file a charge with the Commission, the appropriate office **shall** render assistance in the filing of a charge." (emphasis added) 29 C.F.R. § 1601.6(a). Additionally, "The issuance of a notice of right to sue does not preclude the Commission from offering such assistance to a person issued such notice as the Commission deems necessary or appropriate." 29 C.F.R. § 1601.28(a)(4)

---

[40] Additionally, "Written notice of disposition, pursuant to this section, shall be issued to the person claiming to be aggrieved and to the person making the charge on behalf of such person." 29 C.F.R. § 1601.18(b).

& (b)(4).  Denoia initiated the EEOC process and filed his initial EEOC Charge on his own. (Ex. C, pg. 93:2-10 and Ex. CC).  Upon notice of counsel, the EEOC should have offered assistance to protect Denoia's interests.[41]  Instead, the EEOC waited until February 8, 2023, to email Denoia's counsel and state, "On September 28, 2022, you requested to amend the charge which is after the EEOC issued a Notice of Right to Sue on September 26, 2022. The EEOC will not take any further action to the referenced charge." (Ex. Z).  Had the EEOC emailed this same message on or around October 4, 2022, the dispute at issue would have been resolved.

Finally, upon receipt of Denoia's Amended Charge the EEOC could have either (a) amended Denoias's EEOC Charge and related it back to his original charge or (2) opened a new claim if his initial claim had been closed.  But they cannot choose not to do anything.  Pursuant to 29 C.F.R. § 1601.12(b), an EEOC Charge may be amended and said amendment, "[r]elate[s] back to the date the charge was first received." On the other hand, upon receipt of a charge or similar information the EEOC, "shall render assistance in the filing of a charge,"[42] "[s]hall verify the authorization of such charge by the person on whose behalf the charge is made,"[43] and upon receipt of the charge, the EEOC "shall" notify the aggrieved party or their representative.[44] 29 C.F.R. § 1601.13(4)(i)(C). None of this was done.

The Second Circuit and numerous other courts have recognized that, as a matter of equity, plaintiffs should "not [be] penalize[d] ... for [the] EEOC's mistakes and misinformation." *Jordan v. Kelly Servs., Inc.,* No. 1:18-CV-321, 2019 WL 357052, at *9 (N.D. Ind. Jan. 28, 2019) (citing *Harris v. City of New York*, 186 F.3d 243, 248 n. 3 (2d Cir. 1999). *see also Jackson v. Richards Med. Co.*, 961 F.2d 575, 587 n. 11 (6th Cir. 1992) (noting that "courts have consistently applied principles of equitable tolling to prevent [a] party from being penalized for the [EEOC]'s mistakes"); *Cooper v. Wyeth Ayerst Lederle*, 34 F.Supp.2d 197, 202 (S.D.N.Y. 1999) (noting that "[EEOC] errors should not work to a claimant's detriment"). In short, it would be wrong to bar

---

[41] "While 'technicalities are particularly inappropriate in a statutory scheme [like Title VII] in which laymen, unassisted by trained lawyers, initiate the process,' the requirement of some specificity in a[n EEOC] charge is not a 'mere technicality.' " *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1111 (7th Cir.1992).  When a plaintiff proceeds, "without the assistance of counsel, his pleading is construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015).
[42] 29 C.F.R. § 1601.6(a).
[43] 29 C.F.R. § 1601.7(a).
[44] 29 C.F.R. § 1601.13(4)(i)(C).

plaintiff from seeking redress in this Court because of the EEOC's error.  Therefore, taking all the inferences in Denoia's favor, he has properly outlined a basis for equitable tolling and for his lawsuit to be deemed timely filed.  Therefore, Defendant's Motion should be denied.

### III. Plaintiff's ACRA Claims are Both Timely and Properly Before the Court

Given the above, Denoia's ACRA claims are both timely and permitted. (See Ariz. Rev. Stat. Ann. § 41-1481).  Denoia submitted his May 19, 2022, EEOC Charge to the "Phoenix Intake" email address and receipt was confirmed by Miner, who is the Supervisory Investigator EEOC/Phoenix District Office. (Ex. V).  Similarly, Denoia's September 28, 2022, Amended EEOC Charge was emailed to the Phoenix EEOC District Office. (Dkt. #45-1, pg. 45).  Denoia's Complaint was filed on February 27, 2023, which is within 1-year of May 19, 2022. (Dkt. #1). Therefore, Denoia both timely filed his Charge with the Arizona Civil Rights Division and filed his Complaint within 1-year of the submitted Charge.

### II. Material Facts Exist that Precludes Entry of Summary Judgment on Denoia's Title VII and ACRA Failure to Accommodate Claim

It is unlawful for an employer, "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual…because of such individual's… religion…."  42 U.S.C.A. § 2000e-2.  The term "religion" includes, "all aspects of religious observance and practice, as well as belief…."42 U.S.C.A. § 2000e. Title VII also requires employers to accommodate the religious observances or practices of applicants and employees. *See id.* §§ 2000e-2(a), 2000e(j).  Such accommodations often go above and beyond the non-religious accommodations they might otherwise provide. *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015) ("Title VII does not demand mere neutrality with regard to religious practices .... Rather, it gives them favored treatment ....").  "Title VII is a remedial statute that [is to be construed] liberally in favor of employee protection." *Adeyeye*, 721 F.3d at 450.[45]

To succeed in a Title VII failure to accommodate claim, a plaintiff must establish (1) an observance or practice that is religious in nature; (2) that is based on a sincerely held religious belief; (3) that conflicted with an employment requirement; and (4) the religious observance or

---

[45] *Everts v. Sushi Brokers LLC*, 247 F. Supp. 3d 1075, 1084 (D. Ariz. 2017). "The ACRA is generally identical to Title VII, and thus federal Title VII case law is persuasive in interpreting the ACRA."

practice was the basis or a motivating factor for the employee's discharge or other discriminatory treatment. *Kluge v. Brownsburg Cmty. Sch. Corp.*, 64 F.4th 861, 883 (7th Cir. 2023). If Denoia is able to satisfy his *prima facie* case, then the burden shifts to Roche to prove that it could not accommodate his religious belief or practice without causing undue hardship. *Adeyeye,* 721 F.3d at 449. Roche contests only the first three elements. Because there is evidence to support each element of the *prima facie* case and a material dispute of fact regarding whether Denoia was accommodated and whether an accommodation would have caused Roche an undue hardship, summary judgment is not appropriate on Denoia's claims.

### a. *Plaintiff can Establish a Prima Facie Case that Roche Failed to Accommodate Him*

1. Plaintiff Identified an Observance or Practice that is Religious in Nature.

Denoia testified that his body was a temple, that the covid vaccines represented the "Mark of the Beast," and that he was opposed to the use of aborted fetal cells, which were used to make the available covid vaccines. (Ex. C, pg. 46:8-47:1 49:7-10, 55:4-5, 67:12-16, & 75:1-2; Ex. D; and Ex. K, ¶2 & 5-6). Roche attempts to reframe Denoia's sincerely held beliefs as being "non-religious." But Denoia's religious objections to abortion are self-evident as it is a widely held belief throughout the U.S. and crosses multiple faiths. (*DAVID HURLEY, v. VARIAN MEDICAL SYSTEMS*, 2024 WL 2368438, at *6 (E.D. Wis. May 23, 2024) (Denying summary judgment because, "By connecting his opposition to abortion to the biblical prohibition of murder, [plaintiff] has adequately demonstrated that his opposition to abortion is founded in religion"). Similarly, Denoia's belief that the "Body is a Temple" and the vaccines represent the "Mark of the Beast" have routinely been upheld as valid religious beliefs.[46] Additionally, Roche approved a wide variety of sincerely held beliefs under its Mandate. (Ex. FF). It is reasonable to infer that at least one of these approvals was for the same or similar beliefs as Denoia.

---

[46] *Passarella v. Aspirus, Inc.*, 2023 WL 2455681, at *7 (W.D. Wis. Mar. 10, 2023) (Employer's motion to dismiss was denied where the employee's sincerely held belief demonstrated that she remain "the way God made" her.); (*Prodan v. Legacy Health*, No. 3:23-CV-01195-HZ, 2024 WL 665079, at *5 (D. Or. Feb. 12, 2024) (Denying a motion to dismiss where two employees noted their sincerely held beliefs as their "body is a temple."); *Glover v. Children's Hosp. of Philadelphia*, No. CV 2:23-CV-0463, 2024 WL 290421, at *8 (E.D. Pa. Jan. 25, 2024); *Quinn v. Legacy Health*, No. 3:23-CV-00331-JR, 2024 WL 620344, at *2 (D. Or. Feb. 13, 2024) (Denying employer's motion to dismiss where the employee's sincerely held belief that her "body is a temple" and taking the vaccine was the "Mark of the Beast" were sincerely held religious beliefs that conflicted with an employment requirement); *Wons v. Thermo Fisher Sci., Inc.,* No. 1:23-CV-00480-RM-SBP, 2024 WL 1199617, at *4 (D. Colo. Mar. 5, 2024), *report and recommendation adopted*, No. 23-CV-00480-RM-SBP, 2024 WL 1195596 (D. Colo. Mar. 20, 2024) (Employee's sincerely held belief that the covid vaccines and nasal/mouth swabs were a "mark of the beast" was approved).

Next, Roche argues that an individual's sincerely held beliefs must be tied to an "organized church." (Dkt. #44, pg. 17). This argument ignores Supreme Court precedent.[47] [48] Further, it is illogical to compare Denoia receiving a Tetanus shot without his authorization and submitting to surgery to being required to receive a covid vaccine that is specifically against his sincerely held religious beliefs.

Setting aside Roche's approval of others in customer facing roles, four similar cases have resulted in a denial of summary judgment. In *Scafidi v. B. Braun Med., Inc.,* 2024 WL 184258 (M.D. Fla. Jan. 17, 2024), the employer tried to make the same argument, but summary judgment was denied because the, "jury must decide whether [the employee] possessed a sincerely held religious belief that conflicted with [the employer's] vaccine requirement." *Id.* at *9. Summary judgment was similarly denied in *Gray v. Main Line Hosps., Inc.*, 2024 WL 643140 (E.D. Pa. Feb. 15, 2024) where even though the nurse received the flu vaccine previously her religious objection that the covid vaccines would alter how God created her could be religious or political/scientific and therefore a jury must decide. *Id.* at*5. Summary judgment was denied in *Dunbar v. Twentieth Century Fox, et. al*., CV 22-1075 (C.D. Cal. March 8, 2024) because even though the employer presented evidence that showed the employee contradicting the tenants of his organized religion (the Congregation of Universal Wisdom), the employee's testimony of his own faith was sufficient to raise a genuine issue of material fact as to his sincerity. *Id.* at 9-10. Finally, summary judgment was denied in *Carroll v. Tobii Dynavox LLC*, 2024 WL 1600632 (C.D. Cal. Apr. 3, 2024), as an objection to a vaccine that utilized aborted fetal cells is a "religiously-grounded objection" and there is no, "authority for the proposition that an individual seeking a religious accommodation must be careful *only* to mention her religious concerns lest they be invalidated." *Id.* at *2.

---

[47] It is well established that "[d]enying an individual a religious accommodation based on someone else's publicly expressed religious views—even from the leader of her faith—runs afoul of the Supreme Court's teaching that 'it is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.'" *Kane v. de Blasio*, 623 F. Supp. 3d 339, 351 (S.D.N.Y. 2022) (quoting *Hernandez v. Comm'r of Internal Revenue*, 490

[48] See also *Ringhofer v. Mayo Clinic, Ambulance*, No. 23-2994, 2024 WL 2498263, at *4 (8th Cir. May 24, 2024) (Reversing the district court's dismissal because the fact that other Christians chose to receive the vaccine does not negate the plaintiff's Christian beliefs).

Contrast *Kiel*[49] and *Isaac's*[50] with *Blackwell v. Lehigh Valley Health Network*, 2023 WL 362392, at *7 (E.D. Pa. Jan. 23, 2023), where the employer granted the claimant's religious accommodation request to not receive the covid vaccine due to the use of aborted fetal cells.  In *Petermann v. Aspirus, Inc.*, 2023 WL 2662899, at *2 (W.D. Wis. Mar. 28, 2023) belief, "that she must remain as God made her," would be sufficient to show a religious conflict. Similarly, in *Aliano v. Twp. of Maplewood*, 2023 WL 4398493, at *6 (D.N.J. July 7, 2023), the employer's motion to dismiss was denied where the employees claimed the vaccines would "change the fingerprint of God" and the vaccines would "pollute" the bloodstream and he could only "follow Jesus with untainted blood." Finally, in *Sarsak v. Frontier Elec. Sys. Corp.,* 2023 WL 6849060 (W.D. Okla. Oct. 17, 2023), an employer's motion to dismiss was denied where the employee claimed that temperature checks and wearing a mask violated his sincerely held belief because if he participated, he would violate God's Word regarding the "mark of the beast."[51] [52] [53]  (See also *Colonel Fin. Mgmt. Officer v. Austin*, 622 F. Supp. 3d 1187, 1210 (M.D. Fla. 2022) (Granting injunctive relief and class certification to both Christian and Muslim Marines where the government failed to address the sincere religious concepts of the "evil" of abortion and its use in the covid vaccines) & ("Of course, the injection into the body of a substance against which the recipient harbors a sincere religious objection is morally repugnant (to the class)…."); (*Ahmann v. Washington State Dep't of Transportation*, 2023 WL 4847336, at *1 (E.D. Wash. July 28, 2023) (employer's motion to dismiss was denied because claimant's statement that as, "a practicing Catholic [he] believes that all life is sacred from the moment of conception to natural death and that abortion is a sin" was sufficient to present a sincerely held belief).

---

[49] *Kiel,* which dealt solely with a motion to dismiss and is not Seventh Circuit precedent, involves a court going to great lengths to both reframe religious objections as safety concerns and ignores religious objections to abortion in order to dismiss claimant's complaint. This in turn has led to five appeals being filed.  But *Kiel* has no application here as Roche approved religious requests that were similar to the Plaintiffs. (Ex. E and FF).

[50] *Isaac's,* which dealt solely with a motion to dismiss and is not Seventh Circuit precedent, specifically held that the plaintiff "failed to adequately" link their sincerely held belief to their objection to the covid vaccines.  Denoia has done that here. (Ex. C, pg. 46:8-47:1 49:7-10, 55:4-5, 67:12-16, & 75:1-2; Ex. D; and Ex. K, ¶ 2 & 5-6).

[51] *Finkbeiner* involved a hospital employee with an approved religious accommodation and her only contention was her employer's weekly testing requirement. *Finkbeiner*, 623 F. Supp. 3d at 463.  Therefore, the only relevance of *Finkbeiner* is that Denoia's potential customers (i.e. hospitals) would allow entrance with an approved religious accommodation.

[52] *Devore* is similar to *Finkbeiner* in that the employee was permitted to submit to weekly testing in lieu of receiving the covid vaccine. So, *Devore* is similarly irrelevant.

[53] Roche oddly cites to *Passarella*, which involves three plaintiffs.  Two plaintiffs had their religious claims dismissed, which have since appealed and are pending.  The third, which is similar to Denoia, was permitted to pursue her claims because the plaintiff, her husband, and her children were unvaccinated, and they wanted to remain "the way God made" them.  This is identical to Denoia's testimony. (Ex. C, pg. 46:22-25, 49:7-10, & 75:1-2).

Denoia has sufficiently connected his sincerely held religious beliefs and his objections to the covid vaccines. (Ex. C, pg. 46:15-47:1, 49:7-10, 55:4-5, 64:16-65:1, & 75:1-2; Ex. D; and Ex. K, ¶2 & 5-6).  (*Shields,* 2023 WL 7129953, at *5) (Denying summary judgment where an employee's "belief against the use of fetal cell lines touches upon 'life and death' and 'right and wrong,' thereby addressing fundamental questions concerning deep and imponderable matters."  Further, by identifying as Catholic, describing her faith, and citing Scripture, the employee, "has therefore connected her belief against the use of fetal cell lines to a comprehensive religion").  Therefore, Denoia has presented an observance or practice that is religious in nature.

2.  <u>Plaintiff's Religious Practice is Based on a Sincerely Held Religious Belief.</u>

The sincerity of a person's religious beliefs generally is an issue of fact not properly resolved on a motion for summary judgment. *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir. 1997) (recognizing that the sincerity of a religious belief generally depends on an "assessment of the employee's credibility"); *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002) ("Credibility issues such as the sincerity of an employee's religious belief are quintessential fact questions. As such, they ordinarily should be reserved 'for the factfinder at trial, not for the court at summary judgment.' ") (quoting *Simas v. First Citizens' Fed. Credit Union*, 170 F.3d 37, 49 (1st Cir. 1999)). The Supreme Court has cautioned against second-guessing the reasonableness of an individual's asserted religious beliefs. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014).

At a minimum, Denoia's sincerely held beliefs and testimony create a question of fact for the jury.  (*Ovchinikov v. Oak Valley Auto Sales & Leasing, Inc.*, 2004 WL 2889771, at *6 (D. Or. Dec. 13, 2004) (Because the Plaintiff, "[c]ontinue[d] to practice the Russian Orthodox religion to some degree" a genuine issue of fact existed and summary judgment was denied*); E.E.O.C. v. Chemsico, Inc.,* 216 F. Supp. 2d 940, 950 (E.D. Mo. 2002) (Plaintiff's failure to attend regular church created a question of fact for the jury on summary judgment); (*Cole v. Fulcomer*, 588 F. Supp. 772, 774–75 (M.D. Pa. 1984), *rev'd sub nom. Cole v. Flick*, 758 F.2d 124 (3d Cir. 1985) ("Many individuals who sincerely believe in Christianity or Judaism have not held their religious belief throughout

their lives. Likewise, many sincerely religious individuals engage in formal observance of religious practices infrequently").

The only support cited for Roche's argument is *Summers v. Whitis*, Case No. 4:15-cv-00093-RLY-DML, 2016 U.S. Dist. LEXIS 173222 (S.D. Ind. Dec. 15, 2016), but said case is distinguishable. In *Summers*, the employee objected to processing marriage licenses for same-sex couples based on her religion. *Id*. at **2 and 8-9. In that case, the Court did not question the sincerity of Summers' beliefs; rather, this Court noted "that belief, no matter how sincerely espoused, does not objectively conflict with the purely administrative duty to process marriage licenses." *Id*. at **17-18. If this case were about Denoia's religious objection to administering the covid vaccines or processing paperwork related to the covid vaccines, perhaps it would be on point; but since that is the not the case here, *Summers* is clearly distinguishable.[54]

In essence, Roche has failed to demonstrate that Denoia's religious beliefs were not sincerely held. Therefore, Denoia has properly met this element or, at a minimum, presented a question of material fact which prevents summary judgment.

### c. *Denoia's Accommodation Did Not Create an Undue Hardship*

Roche identifies two undue hardships: (1) that Denoia "could not perform the essential functions of his role (i.e. customer facing) and (2) it was "administratively costly" to accommodate individuals in customer facing roles. While Roche offers these two excuses, it fails to provide any evidence to support the alleged hardships. It also fails to address its approval of the very same accommodation Denoia sought for at least three customer facing individuals and countless vendors. Roche also admits that none of the two alleged undue hardships were actually incurred. Therefore, Roche has failed to meet its burden and summary judgment is improper.

1.  *Groff* is the Appropriate Standard

Recently, the U.S. Supreme Court clarified that, "showing 'more than a *de minimis* cost,'…does not suffice to establish "undue hardship" under Title VII. *Id*. at 2294. Instead, 'undue hardship' is

---

[54] See *Kluge v. Brownsburg Cmty. Sch. Corp.*, 548 F. Supp. 3d 814, 842 (S.D. Ind. 2021), *aff'd*, 64 F.4th 861 (7th Cir. 2023), *vacated on denial of reh'g*, No. 21-2475, 2023 WL 4842324 (7th Cir. July 28, 2023), and *vacated in part*, No. 119CV02462JMSKMB, 2024 WL 1885848 (S.D. Ind. Apr. 30, 2024) (When reviewing *Summers*, the Court noted that requiring a Christian teacher to affirm a transgender student's preferred identity was beyond an "administrative" duty). The same logic applies here.

shown when a burden is substantial in the overall context of an employer's business. *Id.* This fact-specific inquiry comports with both *Hardison* and the meaning of 'undue hardship' in ordinary speech." *Id*. Essentially, "[a]n employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id*. at 2295.[55]  "What matters more than a favored synonym for 'undue hardship' (which is the actual text) is that courts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size, and operating cost of an employer." *Id*. at 2294.  "On this issue, [the employer] bears the burden of proof, so it must show, as a matter of law, that any and all accommodations would have imposed an undue hardship."  *Adeyeye v. Heartland Sweeteners*, *LLC*, 721 F.3d 444, 455 (7th Cir. 2013) (cited with approval in *Groff*, 143 S. Ct. at 2296). (*Kluge,* 64 F.4th at 911), *vacated on denial of reh'g*, 2023 WL 4842324 (7th Cir. July 28, 2023) (The alleged undue hardship must have "some teeth"); *Cook v. Chrysler Corp.,* 981 F.2d 336, 339 (8th Cir.1992) (Any hardship asserted must be "real" rather than "speculative").

   *Groff* is the appropriate analysis to use when considering Roche's undue hardship claims.

2.  Roche's Approval Other Employee Similar to Denoia Negates Any Alleged Undue Hardship

   *Groff* was applied by the Fifth Circuit in *Hebrew v. Texas Dep't of Crim. Just.,* 80 F.4th 717, 724 (5th Cir. 2023).   Relevant here, the Fifth Circuit concluded that the employer could not succeed because the employer "failed to identify any actual costs it will face—much less 'substantial increased costs' affecting its entire business—if it grants this one accommodation"; references to "security and safety concerns" and "possible additional work for [others]" is insufficient to show an undue hardship; and an accommodation denial without considering "any and all" alternatives is improper. *Id*. at 722-23.   Further, the Fifth Circuit concluded that the employer's "safety concerns" were "undercut" where it provided a similar accommodation to some officers for secular reasons. *Id*. at 724.

---

[55] "But under any definition, a hardship is more severe than a mere burden. So even if Title VII said only that an employer need not be made to suffer a 'hardship,' an employer could not escape liability simply by showing that an accommodation would impose some sort of additional costs. Those costs would have to rise to the level of hardship, and adding the modifier 'undue' means that the requisite burden, privation, or adversity must rise to an 'excessive' or 'unjustifiable' level." *Groff*, 143 S. Ct. at 2294.

In *Adams*,[56] a hospital granted 234 of 2,402 requests as of November 4, 2021. *Adams,* 2023 WL 6318821 at *4.   160 plaintiffs sued for religious/medical discrimination. *Id.* Between November 1, 2021, and July 12, 2022, the hospital approved 40 more accommodations. *Id.* The hospital argued that to approve any more accommodations would result in an undue hardship by increasing the risk of covid and creating reputational harm. *Id.* at *6-7.   In denying summary judgment, the court gave the following hypothetical:

> Suppose, for example, that one employee—and only one employee—did, in fact, experience unlawful discrimination on the basis of religion. Had that employee been granted an exemption, the total number of exempt employees would have risen from 234 to 235. Presumably, it would be challenging for MGB to prove that a single marginal case would have materially increased the risk… It is not possible, on the current record, to evaluate the undue hardship created by any one specific accommodation….

*Id.* at *8.  Similar to *Adams*, Roche approved at least three individuals to remain in their customer facing roles, which creates a genuine issue of material fact. (Ex.'s E-H).

To further this point, in *Shields*, the employer, which was a hospital, argued that granting additional religious accommodations would, "give rise to substantial cost to the operations of the business, increase health risks to employees and patients, and impose an undue hardship on business operations." *Shields v. Main Line Hosps., Inc.,* 2023 WL 7129953, *6 (E.D. Pa. Oct. 27, 2023). However, the employer's CEO's testified that "routine testing" reduced exposing others and in turn prevented placing its employees/patients at risk. *Id.* The court concluded that, "this testimony by itself creates a genuine dispute of material fact. Whether granting religious exemptions placed [the employer's] patients and employees at risk is central to determining whether granting [the employee's] religious accommodation would have imposed an undue hardship on [the employer]." *Id.*  Roche is making the same argument and it should be similarly rejected.

---

[56] *Adams* is the continuation of *Together Emps. v. Mass. Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 437 (D. Mass. 2021), *aff'd*, 32 F.4th 82 (1st Cir. 2022), which resulted in a denied preliminary injunction. *Adams*, 2023 WL 6318821, at *4.

Denoia need only present one comparator to survive summary judgment.[57] He has done that. (Ex.'s E-H and J). Similar to *Adams*, *Shields,* and *Cox*, Roche cannot run away from the fact that it has failed to eliminate this genuine issue of material fact in its Motion.

3.  Roche Fails to Demonstrate Denoia Could Not Meet the Essential Functions of His Role

Roche's argument that Denoia could not continue to perform the essential functions of his role is misguided and unsupported by the evidence.

At the outset, Roche's relied upon evidence is refuted by its own job description and testimony. Denoia's prior job description states that the role involves "remote and/or on-site installation" and required around "10%" travel." (Ex. A, pg. 1). Denoia's testimony supports that he worked primarily as a remote employee in his prior role, "99.9% of the time" he could resolve any issue virtually, and if an in-person issue arose Roche generally hired a third party to handle. (Ex. C, pg. 38:8-21, 39:23-25, 40:2-15, & 40:23-41:13). Denoia's testimony was verified through Roche's admission that Denoia's prior role could be both non-customer and customer facing. (Ex. B, pg. 23:2-23).

The reality is Roche does not have any specific evidence that resolves this material fact. In discovery, Roche was asked to identify any customer that would not meet with Denoia due to his religious accommodation. (Ex. R, Int. #15). In response, Roche admits that its Mandate was implemented and individuals were removed not because this was an actual issue but rather to, "avoid these customer issues." (*Id*.). In essence, Roche's alleged undue hardship is nothing more than a hypothetical that has actually been refuted by the fact Roche approved other employees to remain in their customer facing roles. (Ex.'s E-H and J). At a minimum, this conflict creates a question of fact as to Denoia's ability to perform said duties with an approved accommodation and whether it posed an undue hardship.

In support of this position, Roche misapplies *Russo*. In *Russo*, a New York teacher was subjected under New York law to either provide proof of covid vaccination or submit to routine

---

[57] *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 657 (7th Cir. 2021) (noting that "a plaintiff typically needs only one comparator to avoid summary judgment or judgment as a matter of law") (citation omitted); (*Cox v. Nw. Reg'l Educ. Serv. Dist.*, 2024 WL 777598, at *12 (D. Or. Feb. 23, 2024) (Denying summary judgment where six teachers placed on unpaid leave under the employer's covid vaccine mandate because a dispute as to the alleged undue hardship remained as, "Plaintiffs have produced evidence that other individuals *were* allowed to work in person").

testing. *Id*. at *1.  Setting aside that this fact alone makes *Russo* inapplicable as it demonstrates Denoia's requested accommodation was feasible, the accommodation sought by the employee in *Russo* is not similar to Denoia's and the undue hardship alleged was actually supported by evidence.  In *Russo*, the requested accommodation was that her employer, "cut back on her job responsibilities to accommodate remote work." (i.e. eliminate an essential function of her role). *Id*. at *6.  To support the undue hardship of said request, the employer presented evidence that it had to hire a temporary employee and pay said employee $68k to cover said duties. *Id*.

Evidence similar to that in *Russo* has not been presented in our current case.  Rather the opposite has occurred as Denoia performed his duties from March 2020 to November 15, 2021, without issue. (Ex. K, ¶13).  After November 15, 2021, Roche utilized third-party contractors to handle customer facing interactions. (Ex. C, pg. 107:2-19 and Ex. I, Int. #17).  Further, Denoia could continue to perform his duties as Roche permitted other customer facing employees to remain in their roles without issue. (Ex.'s E-H and J).[58]

Denoia has presented sufficient evidence on whether he could continue to perform his "essential" job duties while unvaccinated. Therefore, said argument should be rejected by the Court and Roche's Motion denied.

4. Plaintiffs & Other Unvaccinated Employees did not Subject Roche to Business/Financial Risk

Next, Roche alleges that Denoia's requested accommodation, that he be permitted to wear a mask, social distance, and submit to testing, would subject it to business/financial risk.[59]  The issue is this argument is not supported by any evidence (not even through self-serving affidavits).

---

[58] (See *Cox,* 2024 WL 777598, at *8-9) (Denying summary judgment where a genuine issue of fact remained because employees identified at least one comparator who held an in-person role but was permitted to work a combination of in-person and remotely (as opposed to being placed on indefinite leave); *Carroll v. Tobii Dynavox LLC*, 2024 WL 1600632, at *6 (C.D. Cal. Apr. 3, 2024) (Denying summary judgment where the, "Defendant proffered no evidence sufficient to demonstrate that Plaintiff could not use PPE and testing to mitigate safety concerns (and associated costs); Defendant merely assumes that fact"); *Gray,* WL 643140, *6 (E.D. Pa. Feb. 15, 2024) (Denying summary judgment *where* the employer failed to cite any "evidence to suggest how granting [Plaintiff] the same accommodations, including routine weekly testing, that were offered to other employees who were granted medical or religious exemptions would have created an undue hardship on its business operations"); *Bowlin v. Bd. of Directors of Judah Christian Sch.*, 2023 WL 6323302, *3 (C.D. Ill. Sept. 28, 2023) *(*Granting a motion to dismiss after concluding that the Plaintiff's offered accommodation of testing in lieu of covid vaccination was a reasonable accommodation); (*Truesdale v. Albert Einstein Healthcare Network*, 2024 WL 329931, *5 (E.D. Pa. Jan. 29, 2024) (Summary judgment was denied and a dispute remained as to whether the nurse was a qualified individual as she (1) complied with precautionary requirements prior to the mandate and (2) was permitted to continue working while her request was pending).

[59]Roche cited to *EEOC v. Oak-Rite Mfg. Corp.,* CAUSE NO. IP 99-1962-C H/G, 2001 U.S. Dist. LEXIS 15621, *29-30 (S.D. Ind. Aug. 27, 2001) for its "conducting business" hardship.  Setting aside that *Oak-Rite* is pre-*Groff* and irrelevant to our current case,

To date, Roche has not pointed to one slow down or any instance of a shutdown due to "covid related reasons" (let alone one due to an unvaccinated employee).  Roche also cannot point to a single instance where one of its unvaccinated individuals caused any disruption, whether it be by spreading the virus or requiring medical leave that was any different in frequency or duration than a vaccinated employee.  It also cannot identify any customer that refused to meet with a non-vaccinated employee. (Ex. O, pg. 37:13-40:7, 61:8-22, 64:2-65:6, & 68:9-19).  Ultimately, Roche asks this Court to draw inferences in its favor without providing any evidence to support its self-serving speculation.

Similar to *Hebrew,* 80 F.4th at 723, where the "substantial" or "undue hardship" was reviewed in the "in the overall context" of the employer's $2.4 billion budget, the same must occur here. Roche admitted that it conducted an individual assessment but cannot point to any actual costs it would have incurred had Denoia's accommodation been approved. (Ex. O, p. 25:22-24, 61:23-63:11, & 70:8-18). *Hebrew,* 80 F.4th at fn.* (The reference to the "size and operating cost" of the employer, *Groff,* 143 S. Ct. at 2295, suggests that all other things being equal, larger businesses and institutions must bear a heavier burden in proving undue hardship).

In *Scafidi* a former employee, who held a customer-facing sales position with a medical-product supplier, sued her former employer for failing to accommodate her in regards to the covid vaccines. *Scafidi,* 2024 WL 184258 at *1.  After noting that the employee's sincerely held religious belief was a question of fact for the jury, the court denied summary judgment as to the alleged undue hardship.  In its holding, the court stated:

> [T]here is testimony that Braun did not do any analysis to determine the costs of reconfiguring Scafidi's territory if any hospitals denied her admission…And, indeed, Braun has not presented any estimate of the costs it would have incurred if it had allowed Scafidi to retain her position without getting vaccinated. Furthermore, it does not appear that any of the hospital systems in Scafidi's territory had denied her access or denied her requests for a religious exemption submitted through the hospitals' vendor credentialing systems at the time of her termination.

*Id*. at *11.  Even though Roche testified that it had evidence to support its alleged undue hardship, none has been produced to date. (Ex. I, RFA #11; Ex. R, Int #13, 15 and 16, Request 38-39, and

Roche does nothing to actually further this argument. (*In re Cook Med., Inc.*, 2023 WL 7548765, at *2).  Therefore, it should be ignored.

Ex. S).  The reason for this is because (1) Roche does not have any evidence to support its position and (2) Roche's assessment of Denoia's request was done broadly and not individually.[60]

When the employer engaged in a similar assessment in *Gray*, summary judgment was denied. The same recently happened in *Bellard v. Univ. of Texas MD Anderson Cancer Ctr.,* No. 3:22-CV-88, 2024 WL 1079221, at *10 (S.D. Tex. Feb. 9, 2024).  *Bellard* noted that, "an employer cannot blindly hide behind a 'what if everyone requested the same accommodation' defense." *Id*. at *9.  It then concluded that, "at a macro-level, this hardship may be apparent, but at an individualized level, the inquiry is more difficult," because of this, "reasonable minds may differ as to the specific impact of each plaintiff's requested accommodation" and a genuine issue of material fact remained. *Id*. at *10.  Therefore, Roche's hypothetical argument should be disregarded.[61]

In conclusion, Roche's alleged hardship is nothing more than speculation. (*Adams*, 2023 WL 6318821, at *8) (The court denied the hospital's summary judgment motion noting its speculation did not amount to an undue hardship).[62]  Therefore, it should be rejected by the Court and Roche's Motion denied.

5.  <u>Roche did not provide Denoia with a reasonable accommodation.</u>

Roche attempts to argue that Denoia was accommodated by being offered the chance to apply for non-customer facing roles. Roche's position overlooks EEOC guidance and precedent that requires it to first attempt to accommodate Denoia in his current role.

EEOC guidance outlines that the employer should first attempt to accommodate the individual in their current role. 29 C.F.R. § 1605.2(c)(ii) & (d)(iii).  Consistent with the EEOC guidance, the Court of Appeals for the Seventh Circuit recognizes reassignment as a reasonable accommodation, but it is appropriate *only* after the employer has determined that the employee cannot be accommodated in his or her current position. *Patmythes v. City of Madison*, 2018 WL 2976025, at *13 (W.D. Wis. June 13, 2018), *aff'd*, 856 F. App'x 623 (7th Cir. 2021) citing *King v. City of*

---

[60] *Groff* held that the court must look to "the case at hand" and "the *particular* accommodations at issue." *Groff*, 143 S. Ct. at 2295.
[61] See *Carroll*, 2024 WL 1600632 at *6) (Denying summary judgment where the, "Defendant has failed to show (through declarations or otherwise) that it explored at all whether Plaintiff could perform the tasks with proper PPE, whether its clients would accept such a scenario, or whether Defendant held any discussions with Plaintiff about other options. And Defendant has also failed to show how or why a robust testing regime would impose undue costs, burdens, or other logistical challenges to its operations.").
[62] *Joey Lee,* 2023 WL 6387794 (holding the same as *Adams* on a motion to dismiss).

*Madison*, 550 F.3d 598, 600 (7th Cir. 2008) and *Dalton v. Subaru-Isuzu Auto.*, 141 F.3d 667, 678 (7th Cir. 1998). This logic was upheld in *Scafidi,* when summary judgment was denied because whether a lesser, non-customer facing role was reasonable is a question for the jury. *Scafidi,* 2024 WL 184258 at *10.

Roche is essentially arguing that its preferred accommodation - masking, testing, and social distancing – was not possible for Denoia even though it was approved for both non-customer and customer facing roles. (Ex.'s E-H, J, and FF). Because of these actions, Roche's argument should be ignored not only because it is disingenuous but because it has been rejected by other courts in the covid context.[63]

Instead of doing what was required, Roche simply rejected Denoia's accommodation request without a thorough examination of "any and all" alternatives within his current role. *See Adeyeye*, 721 F.3d at 455; *Hebrew*, 80 F.4th at 723. As discussed above, Roche could have accommodated Denoia in his customer facing role and there has been no evidence offered to the contrary.

## CONCLUSION

Based on the foregoing arguments and authority, Denoia has met each element of his claims under Title VII and the ACRA as to his failure to accommodate claim. Therefore, summary judgment should not be granted. Accordingly, Plaintiff respectfully requests the Defendant's Motion for Summary Judgment be denied.

Respectfully submitted,

/s/ Taylor J. Ferguson
Taylor J. Ferguson,
Andrew Dutkanych, III
BIESECKER DUTKANYCH & MACER, LLC
144 N. Delaware St.
Indianapolis, Indiana 46204

---

[63] *Bowlin v. Bd. of Directors of Judah Christian Sch.*, 2023 WL 6323302 (C.D. Ill. Sept. 28, 2023) (Dismissing plaintiff's case after the plaintiff's offered accommodation, testing in lieu of covid vaccination, was a reasonable accommodation.); *Gray,* WL 643140 at *6) (routine weekly testing in lieu of testing is reasonable); *Payne v. St. Charles Health Sys.*, 2023 WL 4711431, at *3 (D. Or. July 6, 2023), *report and recommendation adopted sub nom. Payne v. ST Charles Med. Ctr.,* 2023 WL 4711095 (D. Or. July 24, 2023) (Denying employer's motion to dismiss where, "there [was] nothing in the record thus far to show that allowing Plaintiff to adhere to his proposed accommodations – wearing an N-95 mask and antibody testing – while continuing to work as a facilities supervisor would constitute an undue hardship by resulting in substantial increased costs in relation to the conduct of Defendant's business").

Office: (317) 991-4765
Fax: (812) 424-1005
Email:  tferguson@bdlegal.com
          ad@bdlegal.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was filed via CM/ECF and served upon on June 7, 2024, upon:

David A. Campbell (0066494)
Hunter T. Edmonds (#37701-29)
Gordon Rees Scully Mansukhani, LLP
Email: dcampbell@grsm.com
hedmonds@grsm.com
*Attorneys for Defendant Roche Diagnostic Corporation*

/s/Taylor J. Ferguson
*Counsel for Plaintiff*